UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CLIFFORD DARDEN,

      Petitioner,

                       Case No. 8:07-CR-446-T-27EAJ
                               8:10-CV-1052-T-27EAJ

UNITED STATES OF AMERICA,

      Respondent.
_____/

## O R D E R

This cause comes on for consideration of Petitioner's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody (Cv-D-1), and the Government's response (Cv-D-6).

By way of background, Petitioner was charged by way of an Indictment with two counts of robbery affecting commerce in violation of 18 U.S.C. §§ 1951 and 2 (Counts One and Three), and two counts of using a firearm during a crime of violence in violation of 18 U.S.C. §§ 924(c)(1)(A) and 2 (Counts Two and Four). Counts One and Two related to the armed robbery of Kris and Pamela's market on June 4, 2007. Counts Three and Four related to the armed robbery of Kwik Stop Food Mart on July 3, 2007. A co-defendant, Aaron Hollins, was also charged as to Counts Three and Four.

Hollins pled guilty as to Counts Three and Four pursuant
to a written plea agreement.  At the status conference on
April 11, 2008, trial counsel for Petitioner, Assistant
Federal Public Defender ("AFPD") Walter Ruiz indicated that he
didn't know whether the parties would be able to resolve the
case short of a trial.  (Cr-D-114, p. 2.)  At the status
conference on June 6, 2008, AFPD David Secular, filling in for
AFPD Ruiz, stated, "Mr. Ruiz has been trying to work out a
resolution of the case.  The problem is, it looks like one may
not be forthcoming that is even remotely conceivable for the
defendant; the difficulty being that there's more than one
924(c) count in this case."  (Cr-D-119. p. 3.)

Petitioner proceeded to a jury trial on July 7, 2008.
During opening statements, AFPD Ruiz stated as follows:

> I'm here to tell you that the evidence with respect
> to July 3rd, 2007 is more than enough.
>
> The Government has plenty of currency for you
> when you go back in your deliberation to come back
> and find Clifford Darden guilty of having committed
> the robbery on July 3rd, of 2007.
>
> However, that currency and that evidence will
> not be enough to get a guilty verdict, or should not
> be enough to get a guilty verdict on June 4th of
> 2007.

(Cr-D-106, p. 20.)  Attorney Ruiz continued that Defendant:

> made the decision to go into this convenience store

2

with a gun.  He made a decision to go in there and take money from one of our citizens against their will.  Now, what you will see is that when he went into this convenience store, Clifford Darden didn't have any intention of hurting anybody or shooting anybody.  He wanted to use this gun so that he could get the person to give him some money, and then he could be on his way.

. . . .

So, when Mr. Darden left the store, one of the things he took with him was money.  The other thing he took with him was the video recorder and the video equipment for the store.

He, at that point, just wanted to get away. Aaron Hollins, who was the person who was with him, was also trying to get away.  The convenience store clerk, who was afraid, reacted, drew his weapon. And he's just been robbed, so he took chase after Mr. Darden.  And what you'll find out is that in the parking lot there were some shots back and forth.

Now, I don't think the evidence can really tell you who shot first or who shot second.  And at the end of the day, ladies and gentlemen, to be honest with you, and candid, it doesn't really matter who shot first or who shot second.  It matters to the Government because they want Mr. Darden to look like much more, uh, menacing and harmful individual.

But at the end of the day it doesn't make him any less guilty of having robbed the store; it doesn't make him any less guilty of having carried that weapon.  The reality is at that point he wanted to get away with that money.  He wasn't looking to do anybody harm.

. . . .

Mr. Darden was, in fact, shot at the scene.  He was hit in the arm, uh, hit in the side of his body, as well.  And then the police showed up and arrested

3

Clifford Darden.

(Id. at 21-22.)

AFPD Ruiz then urged that the jury should not jump to the conclusion that Petitioner committed the robbery on June 4, 2007. (Id. at p. 22.) He explained that differences between that robbery and the July 3rd robbery, including that a single person committed the June 4th robbery, the robber didn't attempt to take the video equipment, there were no fingerprints left at the scene that matched Petitioner, and the witness could not identify the Petitioner as the robber. (Id. at 22-25.) Attorney Ruiz concluded, "So we're going to ask you to focus on that June 4th, uh, set of events and determine that that's, in fact, the case. Because that was not Clifford Darden, although it would be convenient and it would be a two-for-one if that were, in fact, the case." (Id. at 27.)

The trial proceeded with the presentation of the Government's case-in-chief. Defense counsel conducted cross-examination of witnesses, made objections, and moved for a mistrial. At the end of the Government's case-in-chief, the defense moved for a judgment of acquittal on all counts. (Cr-D-107, p. 56.) The Court denied the motion. (Id. at p. 61.)

4

The defense did not put on any testimony, and Petitioner chose not to testify. (Id. at 61-63.)

During closing argument, the Government prosecutor stated that there was no dispute as to the charges related to the July 3rd robbery "[b]ecause counsel for the defendant stood up here in opening and conceded. I concede that my client robbed that store at gunpoint on July 3rd, 2007." (Id. at p. 75.) The prosecutor continued:

> the defense attorney will be up here and -- quite possibly might get up here and tell you that he conceded on that one because he was guilty on that one, but he's disputing the other one because he's not.
>
> And if he says that -- and I don't know if he will -- ask yourselves, what in God's name was he expected to do? He goes in and robs the store, people see him do it, he's on videotape and he's found bleeding out on the sidewalk. Is he going to contest it? Could he possibly say it wasn't him? No.

(Id. at 75-76.)

In response, AFPD Ruiz argued that there was insufficient evidence to convict Petitioner on the charges relating to the June 4, 2007 robbery. He attacked the credibility of co-defendant Aaron Hollis. Ruiz concluded, "This is not a buy-one-get-one-free proposition. There is more than enough evidence in the second charge, but that should not catapult a

guilty verdict on the first case."  (<u>Id.</u> at 93.)

The jury found Petitioner guilty on all counts of the Indictment on July 9, 2008.  On October 8, 2008, the Court sentenced Petitioner to a term of imprisonment of two years as to Counts One and Three, a seven-year term of imprisonment as to Count Two, to run consecutively to the term of imprisonment as to Counts One and Three, and a 25-year term of imprisonment as to Count Four, to run consecutively to the terms of imprisonment as to Counts One, Two and Three.  As such, Petitioner was sentenced to a total term of imprisonment of 34 years.  Petitioner appealed. The Eleventh Circuit affirmed his conviction and sentence on August 25, 2009.  <u>United States v. Darden</u>, 343 Fed. Appx. 445 (11th Cir. 2009) (per curiam).

Petitioner timely filed his § 2255 motion.  Petitioner claims he was denied effective assistance of counsel when his counsel conceded in his opening statement Petitioner's guilt as to Counts Three and Four.  Petitioner argues that his counsel never conferred with him regarding the planned concession of guilt.  Petitioner contends that the concession denied him the right to develop a defense, and that but for the concession, there is a strong probability that the outcome of the trial would have been different.

The Government argues that, in light of the evidence, defense counsel made a strategic decision to attempt to mitigate prejudice.  The Government continues that defense counsel did not fully concede Petitioner's guilt.  The Government also asserts that the Court need not decide whether defense counsel's performance was deficient because Petitioner fails to show any prejudice in light of the overwhelming evidence of Petitioner's guilt.

## INEFFECTIVE ASSISTANCE OF COUNSEL

Claims of ineffective assistance of counsel require a showing of the two-prong test as set forth by the Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984).  In order to succeed under the Strickland test, a movant has the burden of proving: (1) deficient performance by counsel; and (2) prejudice resulting therefrom.  Id. at 687.

The first prong of the Strickland test requires the Court to determine whether trial counsel performed below an "objective standard of reasonableness," while viewing counsel's challenged conduct on the facts of the particular case at the time of counsel's conduct. 466 U.S. at 688, 690. Notably, there is a strong presumption that counsel rendered adequate assistance and made all significant decisions with

7

reasonable and competent judgment.   Id.

A counsel's performance is deficient if, given all the circumstances, his performance falls outside of accepted professional conduct. Strickland, 466 U.S. at 690. "Judicial scrutiny of counsel's performance must be highly deferential," and "counsel cannot be adjudged incompetent for performing in a particular way in a case, as long as the approach taken "might be considered sound trial strategy."   Chandler v. United States, 218 F.3d 1305, 1313-14 (11th Cir.2000) (en banc) (quoting Strickland, 466 U.S. at 689 and Darden v. Wainwright, 477 U.S. 168 (1986)).   Rather, for counsel's conduct to be unreasonable, a petitioner must show that "no competent counsel would have taken the action that his counsel did take."   Chandler, 218 F.3d at 1315.

The Supreme Court has consistently held that "as a matter of law, counsel's conduct ... cannot establish the prejudice required for relief under the second [prong] [o]f the Strickland inquiry." Nix v. Whiteside, 475 U.S. 157, 175 (1986). This admonition emphasizes the stringent requirement that if a petitioner does not satisfy both prongs of the Strickland test, "he will not succeed on an ineffective assistance claim." Zamora v. Dugger, 834 F.2d 956, 958 (11th

Cir. 1987).  See also Weeks v. Jones, 26 F.3d 1030, 1037 (11th Cir. 1994).  Therefore, a court may resolve a claim of ineffective assistance of counsel based solely on lack of prejudice without considering the reasonableness of the attorney's performance.  Waters v. Thomas, 46 F.3d 1506, 1510 (11th Cir. 1995) (citing Strickland, 466 U.S. at 697).

Conceding a client's guilt can be a reasonable trial strategy.  See Florida v. Nixon, 543 U.S. 175 (2004); Thompson v. Haley, 255 F.3d 1292, 1298-99 (11th Cir. 2001) (court found no ineffective assistance of counsel where defense counsel made a strategic decision in light of the anticipated evidence to concede that defendant had robbed and kidnaped victim but to contest his participation in the murder); Kelly v. United States, 820 F.2d 1173, 1176 (11th Cir. 1987) (per curiam) (court found it was reasonable for attorney to admit client's guilt as to importation charges when the client was arrested on a boat loaded with marijuana and attorney did so in an attempt to persuade the jury of the defendant's innocence on distribution charges); United States v. Thomas, 417 F.3d 1053, 1056-59 (9th Cir. 2005) (court found no prejudice where attorney conceded in opening and closing statements Thomas' participation in one robbery where Thomas was "in effect,

caught red-handed" but attorney contested the remaining charges which carried significantly greater penalties); United States v. Holman, 314 F.3d 837 (7th Cir. 2002) ("we have held that conceding guilt to one count of a multi-count indictment to bolster the case for innocence on the remaining counts is a valid trial strategy which, by itself, does not rise to the level of deficient performance") (citations omitted). Moreover, an attorney's failure to gain the client's consent does not render a strategic decision to concede guilt presumptively prejudicial. See Nixon, 543 U.S. at 179; Thompson, 417 F.3d at 1059. Rather, prejudice is only presumed where "counsel has entirely failed to function as the client's advocate." Nixon, 543 U.S. at 189. To put it another way, prejudice is presumed where counsel "entirely fails to subject the prosecution's case to meaningful adversarial testing." Id. at 190 (citing United States v. Cronic, 466 U.S. 648, 659 (1984)). Even where the defendant does not explicitly consent to a trial strategy of conceding guilt, there is no ineffective assistance of counsel if Petitioner fails to show that counsel's performance was deficient or any resulting prejudice. See Nixon, 543 U.S. at 192.

After reviewing the record, the Court finds that Petitioner's trial counsel did not "entirely fail to subject the prosecution's case to meaningful adversarial testing." While defense counsel conceded that he anticipated there would be sufficient evidence to find Petitioner guilty of the charges relating to the July 3, 2007 robbery, Petitioner still "retained the rights accorded to a defendant in a criminal trial." See Nixon, 543 U.S. at 188. In this regard, the Government still put on evidence at the trial relating to Petitioner's guilt as to Counts Three and Four. Further, defense counsel cross-examined the witnesses, lodged objections to questions asked of witnesses by Government counsel, orally moved for a mistrial, and moved for a judgment of acquittal as to all counts of the Indictment. Accordingly, defense counsel functioned as an advocate for Petitioner, and, as such, the Strickland test applies in this case.

Notably, the Government fails to address in its response Petitioner's specific contention that his attorney conceded Petitioner's guilt as to the July 3, 2007 robbery without consulting Petitioner or obtaining his consent. There is, however, some evidence of record which suggests that defense

counsel discussed with Petitioner the trial strategy of conceding his guilt as to the charges relating to the July 3, 2007 robbery, and that Petitioner agreed to the strategy. In this regard, at the sentencing hearing, AFPD Adam Allen[1] stated as follows:

> there were attempts to resolve this case short of trial, offers from the defense, the government. They were not inclined to drop one of the 924(c) charges which puts him at the 25-year minimum mandatory penalty, which certainly the government is entitled to, which placed Mr. Darden in a difficult decision. And the decision was made in light of what was being offered to - to go to trial and contest one of the robberies. It's my understanding the other robbery was not seriously contested by the defense.

(Cr-D-121, p. 13.) Petitioner was present at the sentencing hearing and did not raise any objection to defense counsel's statement.

Additionally, co-defendant Hollins' testimony at trial also suggests Petitioner was aware of and agreed to the trial strategy. In this regard, Hollins testified that Petitioner talked to Hollins about a week prior to Petitioner's trial when Hollins and Petitioner were on the same jail transport bus. (Cr-D-106, p. 190-91.) According to Hollins, Petitioner told Hollins that "he was going to trial for the first

---

[1] AFPD Allen substituted as counsel for Petitioner after the trial but prior to sentencing.

videotape, for the June robbery, and he said that they don't have nothing [sic] on him; that if [Hollins] did see the camera, to say that guy's too slim." Id. at p. 191. Hollins reiterated that Petitioner told Hollins that "they didn't have any evidence on him, that they couldn't prove it was him" as to one of the robberies. (Id.)

Regardless, the Court need not determine whether defense counsel consulted with Petitioner regarding the trial strategy or whether defense counsel secured Petitioner's consent to the strategy because Petitioner has not shown that but for counsel's strategy there is a reasonable probability that the result of the trial would have been different.

Petitioner faced a mandatory minimum sentence of imprisonment of seven (7) years under 18 U.S.C. § 942(c)(1)(A)(ii) if convicted of just one of the firearm counts charged. Significantly, Petitioner was subject to a consecutive mandatory minimum term of imprisonment of 25 years if convicted of a second firearm charge. See 18 U.S.C. § 924(c)(1)(C)(I). Thus, it appears that Petitioner's trial counsel concession of Petitioner's involvement in the July 3, 2007 robbery while contesting the charges related to the June 4, 2007 was an attempt to achieve credibility with the jury

13

and persuade the jury of Petitioner's innocence as to Counts One and Two of the Indictment.

The evidence of Petitioner's guilt with regard to the July 3, 2007 armed robbery was overwhelming. Specifically, there was videotape evidence of the robbery which depicted Petitioner pulling a gun on the store clerk and Petitioner and co-defendant Hollins robbing the store. Additionally, the store clerk, Ayman Sayed, identified Petitioner as one of the robbers and testified that Petitioner brandished a firearm. Also, co-defendant Hollins testified about his and Petitioner's participation in the robbery and further testified that Petitioner carried a firearm during the robbery. Even more significant is the fact that Petitioner's attempt to flee was thwarted when he was shot by Sayed. Finally, there was evidence that when law enforcement arrived on the scene, Petitioner admitted to law enforcement that he had attempted to rob the store. Given the overwhelming evidence of his guilt beyond a reasonable doubt as to July 3, 2007 charges, Petitioner has not shown that a reasonable probability exists that the outcome of the case would have been different had his attorney not conceded guilt as to Counts Three and Four during opening statement and closing

14

argument.

Nor is there any evidence demonstrating that the concession resulted in the jury finding Petitioner guilty of Counts One and Two. Defense counsel repeatedly argued that the jury should not find Petitioner was guilty of the first armed robbery simply based on the fact that he was involved in the second armed robbery. Additionally, the Court instructed the jury to consider each charge of the Indictment and the evidence pertaining to each charge separately. (Cr-D-107, p. 116.) The Court further instructed that the fact that the jury may find the defendant guilt as to one of the offenses should not affect the jury's verdict as to any other offense. (Id.) There is no evidence that the jury failed to follow the Court's instructions, and there was sufficient evidence to support the jury's verdict that Petitioner was guilty beyond a reasonable doubt as to Counts One and Two. Finally, Petitioner has not shown his attorney's conduct deprived Petitioner of the right to a fair trial.

## EVIDENTIARY HEARING

Petitioner has failed to demonstrate the need for such an evidentiary hearing. The Court need not conduct an evidentiary hearing where it is evident from the record that

15

the petitioner was not denied effective assistance of counsel. <u>Diaz v. United States</u>, 930 F.2d 832, 834 (11th Cir. 1991). Based on the foregoing analysis, the Court does not find that an evidentiary hearing is warranted.

It is therefore ORDERED that:

1)   Petitioner's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody (CV-D-1) is DENIED.

2)   The Clerk is directed to enter judgment in favor of the Government and close this case.

## CERTIFICATE OF APPEALABILITY AND

## LEAVE TO APPEAL <u>IN</u> <u>FORMA</u> <u>PAUPERIS</u> DENIED

IT IS FURTHERED ORDERED that Petitioner is not entitled to a certificate of appealability.   A prisoner seeking a motion to vacate has no absolute entitlement to appeal a district court's denial of his petition.  28 U.S.C. § 2253(c)(1).   Rather, a district court must first issue a certificate of appealability (COA).  <u>Id.</u>   "A [COA] may issue … only if the applicant has made a substantial showing of the denial of a constitutional right."  <u>Id.</u> at § 2253(c)(2).   To make such a showing, defendant "must demonstrate that

16

reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," <u>Tennard v. Dretke</u>, 542 U.S. 274, 282 (2004) (quoting <u>Slack v. McDaniel</u> 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 335-36 (2003) (quoting <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 n. 4 (1983)). Petitioner has not made the requisite showing in these circumstances. Finally, because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal <u>in forma pauperis</u>.

DONE AND ORDERED at Tampa, Florida this _9th_ day of August, 2010.

WILLIAM J. CASTAGNA
SENIOR UNITED STATES DISTRICT JUDGE